UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMIE COLEY,

    Petitioner,                                      Civil Action No. 07-CV-15468

v.                                              HON. BERNARD A. FRIEDMAN

SHIRLEE HARRY,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION
FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY**

Petitioner Tommie Coley has filed a *pro se* habeas corpus petition challenging his convictions on four counts of criminal sexual conduct. Respondent urges the court to deny the petition. Having reviewed the record, the court agrees that petitioner is not entitled to habeas relief.

**I. Background**

Petitioner was charged in Wayne County, Michigan, with three counts of first degree criminal sexual conduct and three counts of second degree criminal sexual conduct. The charges arose from allegations that petitioner penetrated and inappropriately touched his eight-year-old granddaughter. The complainant, her sister, and a physician who examined the complainant testified at petitioner's bench trial. Petitioner did not testify or present any witnesses. On April 1, 2003, the trial court found petitioner guilty of two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a) (sexual penetration with a person under the age of thirteen), and two counts of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(a) (sexual contact with a person under the age of thirteen). The trial court sentenced petitioner to 15-25 years

imprisonment for the first-degree convictions and 5-15 years for the second-degree convictions. All of the sentences were ordered to run concurrently.

Petitioner challenged the sufficiency of the evidence in an appeal of right. The Michigan Court of Appeals affirmed petitioner's convictions, *see People v. Coley*, No. 248598 (Mich. Ct. App. Oct. 28, 2004), and the Michigan Supreme Court denied leave to appeal. *See People v. Coley*, 472 Mich. 939; 698 N.W.2d 393 (2005) (table).

On June 16, 2006, petitioner filed a motion for relief from judgment, which alleged ineffective assistance of trial counsel. The trial court denied the motion, and the Michigan Court of Appeals denied leave to appeal because petitioner failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Coley*, No. 275923 (Mich. Ct. App. June 19, 2007). On November 29, 2007, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Coley*, 480 Mich. 952; 741 N.W.2d 362 (2007) (table).

Petitioner filed his habeas petition on December 26, 2007. The grounds for relief read:

> I. Petitioner was denied his due process right to be convicted only on the basis of legally sufficient evidence where the evidence presented at trial did not support the convictions for criminal sexual conduct.
>
> II. Petitioner was denied his 6th Amendment constitutional right to effective assistance of trial counsel.

Respondent argues in her answer to the habeas petition that petitioner's first claim lacks merit and that his second claim is procedurally defaulted because the State's appellate courts denied leave to appeal the ineffective-assistance-of-counsel issue pursuant to Michigan Court Rule 6.508(D). The court shall address both of petitioner's claims on the merits, because the claims lack

merit and procedural default is not a jurisdictional limitation. *See Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009).

## II. Standard of Review

Petitioner is entitled to a writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

## III. Discussion

### A. Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence to support his convictions for criminal sexual conduct. He asserts that the medical evidence was ambiguous and that the complainant's testimony was marginal at best because she could not remember when the incidents happened or how many times she was assaulted.

**1. Legal Framework**

The relevant question on habeas review of a sufficiency-of-the-evidence claim "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Courts must apply the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

In Michigan, the elements of first-degree criminal sexual conduct, as charged in this case, are (1) sexual penetration (2) with a person under the age of thirteen. *See* MICH. COMP. LAWS § 750.520b(1)(a). "Sexual penetration" is defined in the statute as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." MICH. COMP. LAWS § 750.520a®.

The elements of second-degree criminal sexual conduct, as charged in this case, are (1) sexual contact (2) with a person under thirteen years of age. *See* MICH. COMP. LAWS § 750.520c(1)(a). "'Sexual contact' includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." MICH. COMP. LAWS § 750.520a(q). The phrase "intimate parts" "includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." MICH. COMP. LAWS § 750.520a(e).

**2. Application**

The complainant identified petitioner at trial as her grandfather. She testified that when she started third grade she began to go to her grandfather's home on Wednesdays after school. Nobody else would be there, and when she went in her grandfather's room, he touched her on her breast and between her legs. This happened more than two times. Her grandfather also put the thing that he used to go to the bathroom in the "hole" between her legs, and it hurt. He did this more than two times, and he told her that he would go to jail if she told anyone about it.

Although the complainant's testimony did not have to be corroborated, *see* MICH. COMP. LAWS § 750.520h, Dr. Tonya Touchstone testified that she saw the complainant in the emergency room on January 28, 2003. The complainant informed Dr. Touchstone that her grandfather had "stuck his thing in between her legs" and inside of her during the previous week and a long time ago. Upon examining the complainant, Dr. Touchstone noticed some irritation inside the labia majora and a 1- to 2-millimeter tear in the complainant's posterior forchette, which Dr. Touchstone described as inside the hymen. Dr. Touchstone testified that although the hymen was intact, penetration is possible in those circumstances, and she thought that abuse was involved. She claimed that the tear was suspicious and consistent with what the complainant told her.

The trial court found the complainant to be credible. The court concluded from the complainant's testimony that petitioner touched the complainant between the legs and on her breasts more than two times. On the issue of penetration, the trial court correctly noted that an intrusion beyond the labia majora is penetration for purposes of the criminal sexual conduct statute. *See People v. Bristol*, 115 Mich. App. 236, 237-238; 320 N.W.2d 229, 229-30 (1981). The fact that the complainant experienced pain during the incidents led the trial court to conclude that petitioner placed his penis in the complainant's vaginal area so as to cause the tear in her posterior forchette.

5

No seminal discharge was found in the complainant, but "emission of semen is not required" for first degree criminal sexual conduct. MICH. COMP. LAWS § 750.520a®. And even though Dr. Touchstone conceded that the tear in the complainant's posterior forchette could have been caused by something other than abuse, the prosecutor was not required "to exclude every reasonable hypothesis except that of guilt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992).

A rational trier of fact could have concluded from the evidence, viewed in the light most favorable to the prosecution, that petitioner sexually penetrated the eight-year-old complainant's vaginal area with his penis on two occasions and that he touched her breast two times for the purpose of sexual arousal. Thus, the state appellate court's conclusion that the evidence was sufficient to support petitioner's convictions was not contrary to, or an reasonable application of, *Jackson*.

**B. Trial Counsel**

Petitioner's second and final claim alleges that he was denied his Sixth Amendment right to effective assistance of trial counsel. Petitioner contends that his trial attorney was absent at a critical stage of the proceedings and failed to file pretrial motions, present a defense, or ensure that petitioner was competent to make decisions regarding his defense. The trial court addressed each of these claims when adjudicating petitioner's motion for relief from judgment. The trial court concluded that petitioner was not deprived of his right to effective assistance of counsel. For the reasons given below, the court finds that the trial court's conclusion was objectively reasonable.

**1. Legal Framework**

6

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as clearly established Federal law" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness" and if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687-88.

The prejudice prong of *Strickland* requires petitioner to demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### 2. Counsel's Absence from a Pretrial Conference

Petitioner alleges that he was denied counsel at a critical stage of the proceedings because his trial attorney was absent from a pretrial conference on February 20 and 21, 2003. The Supreme Court recently reaffirmed that, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 129 S. Ct. 2079, 2085 (2009). This "right extends to having counsel present at various pretrial 'critical' interactions between the defendant and the State." *Kansas v. Ventris*, 129 S. Ct. 1841, 1845 (2009). "[T]he period between appointment of counsel and the start of trial is indeed a 'critical stage' for Sixth Amendment purposes." *Mitchell*

*v. Mason*, 325 F.3d 732, 742-43 (6th Cir. 2003). However, the right to counsel "may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Montejo*, 129 S. Ct. at 2085.

Petitioner's trial attorney apparently was absent from a pretrial conference scheduled for February 20, 2003, but the conference was adjourned to the following day. The state court docket indicates that the conference was adjourned "at the request of the defense." On the following day, substitute counsel appeared for petitioner. The court concludes that petitioner voluntarily waived his right to counsel on February 20, 2003, and that he was not deprived of counsel on February 21, 2003.

Petitioner nevertheless asserts that substitute counsel was unfamiliar with his case on February 21, 2003. While "the right to counsel is the right to the effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), petitioner has not shown that substitute counsel's lack of familiarity with his case impeded his trial attorney's efforts to prepare for trial. The court therefore concludes that the absence of trial counsel from a single pretrial conference approximately five weeks before a one-day bench trial did not deprive petitioner of his constitutional right to counsel at a critical stage of the proceedings.

### 3. Failure to File Pretrial Motions

Petitioner alleges next that his trial attorney failed to file any pretrial motions. While this appears to be true, the case was fairly simple, and petitioner has not identified any motions that

would have helped him or been dispositive of his case. Consequently, defense counsel's failure to file any motions did not amount to deficient performance and did not prejudice the defense. An attorney is not ineffective for failing to file a meritless motion. *See Johnson v. Tennis*, 549 F.3d 296, 303 (3d Cir. 2008).

### 4. Failure to Present a Defense

Petitioner claims that his trial attorney should have produced his son and the complainant's brother as witnesses at his trial. According to petitioner, both witnesses would have testified that (1) he did not see the complainant during the month of January 2003 and (2) the complainant and her sister were known for fabricating stories to get attention or to get their way.

"Time is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim." *People v. Dobek*, 274 Mich. App. 58, 83; 732 N.W.2d 546, 564 (Mich. Ct. App. 2007). Petitioner was charged with committing the crimes some time from September 2002 through January 22, 2003. Thus, it was not deficient performance to forego calling witnesses who would have testified that petitioner had no contact with the complainant in January of 2003.

As for petitioner's allegation that defense witnesses could have impeached the complainant's credibility and that of her sister, the record suggests that the girls were reluctant to incriminate their grandfather. When asked what happened at her grandfather's house, the complainant stated that she forgot, and when asked what happened between her legs, she answered, "I don't remember." (Tr. Apr. 1, 2003, at 9, 11.) She later testified that she initially disclosed the incidents to her sister because she did not want anybody else to know what happened and she knew that her grandmother would call the police if she told her what happened. She did not want her

grandmother to call the police because she did not want her grandfather to be arrested. (*Id*. at 13-14.)     The complainant's 17-year-old sister testified that, in late January of 2003, the complainant informed her that their grandfather had been feeling her chest. She told the complainant not to tell her anything more because she thought it was terrible. Although she ultimately informed the girls' mother and grandmother of the allegations, she failed to tell the police that their grandfather had touched the complainant on intimate parts of her body. (*Id*. at 20-24.)

The girls' apparent reluctance to disclose the abuse tends to show that they were not fabricating their testimony. Dr. Touchstone, moreover, lent credibility to the girls' testimony when she testified about the tear on the complainant's posterior forchette. For these reasons, there is not a reasonable probability that the result of the proceeding would have been different had defense counsel produced petitioner's son and the complainant's older brother as witnesses. Thus, petitioner was not prejudiced by his attorney's allegedly deficient performance.

### 5. Failure to Test for Competence

Petitioner alleges that he was under the influence of prescribed antidepressants at the time of trial. He contends that his attorney should have ascertained whether he was competent to make decisions pertaining to his defense, such as whether to waive his right to a jury trial and his right to testify.

The standard for competency is "(1) whether the defendant has a rational as well as factual understanding of the proceedings against him and (2) whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Indiana v. Edwards*, 128 S. Ct. 2379, 2383 (2008) (emphasis and quotations omitted). Petitioner has not documented his need for medication, and "not every mental illness demonstrates incompetence

10

to stand trial." *Rever v. Acevedo*, No. 09-1156, 2010 WL 6103, at *5 (7th Cir. Jan. 4, 2010). Moreover, nothing in the record calls petitioner's competence into question. He said very little on the record during trial, but at his sentencing two weeks later he engaged in an intelligent colloquy with the trial court. He explained to the trial court that a letter he had written to the complainant was not an admission of guilt, but an expression of remorse for the complainant's ordeal. He asserted a claim of innocence, and he stated that he did not believe he received adequate representation from his trial attorney. (Tr. Apr. 15, 2003, at 11.) Petitioner has failed to establish that his depressive illness caused him to be incompetent at trial.

**IV. Conclusion**

The state courts' rejection of petitioner's claims did not result in an unreasonable application of the facts and was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Accordingly, the habeas petition denied.

The court declines to grant a certificate of appealability because reasonable jurists would not find the court's assessment of petitioner's constitutional claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If petitioner nevertheless chooses to appeal this decision, he may do so without further authorization, because he was permitted to proceed *in forma pauperis* in this Court. Fed. R. App. P. 24(a)(3).

SO ORDERED.

        S/Bernard A. Friedman
        BERNARD A. FRIEDMAN
        SENIOR UNITED STATES DISTRICT JUDGE

Dated: February 4, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 4, 2010, by electronic and/or ordinary mail.

        S/Felicia Moses for Carol Mullins
        Case Manager